COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| PEGGY PRYOR AND MELODYE PRYOR, | § | No. 08-09-00284-CV |
| | § | |
| Appellants, | | Appeal from the |
| | § | |
| v. | | 109th Judicial District Court |
| | § | |
| | | of Andrews County, Texas |
| RICHARD DOLGENER, COUNTY JUDGE OF ANDREWS COUNTY, | § | |
| | | (TC# 17,988) |
| | § | |
| Appellee. | | |

## **O P I N I O N**

This is an accelerated appeal of an election contest arising from a highly controversial bond election to issue bond for the construction of a low-level radioactive waste disposal facility in Andrews County. The Appellants, Ms. Peggy Pryor and Ms. Melodye Pryor ("the Pryors"), have appealed a summary judgment granted in favor of Appellee, Judge Richard Dolgener. The Pryors argue that the trial court erred because allegedly erroneous or deficient voters' registration applications result in illegal votes in violation of the Texas Election Code.

On May 9, 2009, Andrews County held a bond election to issue bonds to support construction of a new low-level radioactive waste disposal facility in Andrews County ("the May 9 election"). The highly contested bond proposal was approved by a three-vote margin – 642 to 639. Before the election, the Pryors requested oversight of the election by the Secretary of State of Texas. A Secretary of State election inspector did observe the May 9 election. There was a recount which confirmed the vote count, and the Andrews County Commissioners Court

completed its canvas of the May 9 election returns. The Secretary of State election inspector also presented a report confirming that Andrews County election officials had complied with the Texas Election Code in conducting the election.

On June 17, 2009, the Pryors, both qualified voters who voted in the election, filed an election contest against the Honorable Richard Dolgener, County Judge of Andrews County, to challenge the May 9 election. The Pryors subsequently filed a motion for summary judgment on the basis that more than ninety votes were illegally cast in the election. On September 8, 2009, Judge Dolgener filed a motion for a final take-nothing summary judgment on all of the Pryors' claims. After a hearing, the trial court denied the Pryors' motion for summary judgment but granted Judge Dolgener's take-nothing summary judgment. This accelerated appeal followed.

The sole issue before us is the Pryors' contention that a voter applicant's error or omission in his or her voter's registration application invalidates that registration, and so a vote resulting from such a defective registration is illegal and violates the Texas Election Code.

We review summary judgments *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). In this case, Judge Dolgener filed a "traditional" motion for summary judgment under Rule 166a(c) of the Texas Rules of Civil Procedure. When reviewing a traditional summary judgment, we view the evidence in the light most favorable to the nonmovant and resolve any doubts against the motion. *Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006). We must consider whether reasonable and fair-minded jurors could come to different conclusions considering all the evidence presented. *See id*. When, as in this case, the trial court's order does not specify the ground upon which it relied for its ruling, we must affirm the judgment if any of the theories asserted in the motion is meritorious. *Garcia v.*

*El Paso Ltd. P'ship*, 203 S.W.3d 432, 435 (Tex.App.--El Paso 2006, no pet.).

In an election contest, the trial court's obligation is to ascertain whether the outcome is not a true outcome because, inter alia, illegal votes were counted. TEX.ELEC.CODE ANN. § 221.003(a)(1)(Vernon 2010). An illegal vote is one that is not legally countable. *Id*. at § 221.003(b).

In the instant case, the Pryors point to a variety of defects or omissions in the registration applications of certain Andrews County individuals who voted in the May 9 election. They argue that such defects invalidated these registrations, and so the votes associated with these registrations were uncountable and illegal. These defects included omissions of applicants' complete signatures, failure to indicate applicants' citizenship status, and failure to indicate a signee's relationship to the applicant when signing on behalf of the applicant. The Pryors argue an election official's mistake with respect to a registration application would not disqualify one's vote, but a voter's own mistake with respect to his application would disqualify him from voting. They further claim that because it was the voters who committed the errors contained in the disputed registration applications, this yielded illegally registered votes for the May 9 election.

The Texas Election Code provides that once the registrar approves an applicant's registration application, the application remains "effective until canceled" under the Code. TEX.ELEC.CODE ANN. § 13.143(c)(Vernon 2010). The Code provides that in general, "a registered voter may challenge the registration of another voter of the same county at a hearing before the registrar." TEX.ELEC.CODE ANN. § 16.091. At the conclusion of the hearing, "the registrar shall promptly determine the challenge," and issue a written decision. *Id*. at § 16.095(a). Further, "[i]f the registrar determines that the voter's registration should not be canceled," the

registration remains effective. *Id*. at § 16.095(b). On the other hand, "[i]f the registrar determines that the voter's registration should be canceled, the registrar shall cancel the registration on the 31st day after the date the registrar's decision is issued." *Id*. at § 16.095(c).

The Pryors have not disputed the specific qualifications of those who voted in the May 9 election, including the voters' residence and citizenship; they simply argue these individuals lacked eligibility to vote based on their facially defective registration applications for voting. However, the case law cited in support of their argument that "when voters make mistakes that violate the requirements of the Texas Election Code, those votes are not countable" deal with an applicant's qualifications to vote, which is governed by Chapter 11 of the Texas Election Code. That is, an applicant's qualifications to vote are distinct from the registration process to vote, which is governed by other parts of the Code, *inter alia* Chapters 13 and 16. The record also reflects that the Pryors never challenged the registration status of any voter at a hearing before the Andrews County registrar. We find that an omission or error in a voter's registration application does not automatically invalidate that registration. And unless a party challenges a voter's registration, and the registrar determines it should be canceled, the registration remains effective. *See* TEX.ELEC.CODE ANN. §§ 16.091, 16.095. We conclude that the disputed registration applications did not yield uncountable or illegal votes in the May 9 election.

Accordingly, the Pryors' sole issue is overruled and the judgement of the trial court is affirmed.


April 14, 2010

DAVID WELLINGTON CHEW, Chief Justice


-4-

Before Chew, C.J., McClure, J., and Bramblett, Judge
Bramblett, Judge (Sitting by Assignment)