

# NUMBER 13-20-00309-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JOSE "JOE" FLORES,                                                         Appellant,

v.

EVERARDO "EVER" VILLARREAL,                                    Appellee.

### On appeal from the 398th District Court
### of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Longoria
Memorandum Opinion by Chief Justice Contreras**

This appeal concerns a contest to the results of the March 3, 2020 Democratic primary election for Hidalgo County Commissioner Precinct 3. The trial court granted no-evidence summary judgment in favor of appellee, Everardo "Ever" Villarreal. Appellant, Jose "Joe" Flores, contends by five issues on appeal that: (1) an election contest may not

be decided via summary judgment; (2) there was more than a scintilla of evidence to show that Flores was the actual winner of the election or that the actual winner cannot be determined; (3) the trial court abused its discretion by sustaining various objections to evidence and refusing to extend deadlines pursuant to the Texas Supreme Court's emergency pandemic orders; (4) Villarreal should not "be allowed to benefit from the procedural maneuvering and morass he has created"; and (5) this Court should render judgment in favor of Flores pursuant to the Texas Supreme Court's emergency orders. We affirm.

## I. BACKGROUND

The March 12, 2020 final canvass showed that Villarreal defeated Flores, the incumbent, by 92 votes out of 19,982 cast. Flores filed his contest petition on March 23, 2020, arguing that more than 92 illegal votes were counted. *See* TEX. ELEC. CODE ANN. § 221.003(a)(1). He alleged a litany of irregularities, including: (1) votes were cast for Villarreal in exchange for cash payments, *see* TEX. PENAL CODE ANN. § 36.02(a)(1) (defining the criminal offense of bribery); (2) assistance was given to voters not eligible for such assistance, *see* TEX. ELEC. CODE ANN. §§ 64.031, .037; (3) a member of the early voting ballot board was an employee of Villarreal's campaign, *see id.* §§ 32.054(a), 87.003; (4) votes were cast by non-residents of Precinct 3, *see id.* § 11.001(a)(2); (5) votes were cast by non-citizens, *see id.*; and (6) votes were cast by felons who are ineligible to vote, *see id.* § 11.002(a)(4). Flores sought a judgment declaring him to be the true winner of the election; in the alternative, he sought a judgment stating that the true outcome of the election cannot be determined and ordering a new election.

On April 13, 2020, Villarreal filed an answer and propounded discovery requests,

2

including interrogatories and requests for disclosure. Among the interrogatories was the following:

> For each voter who you allege . . . was illegally assisted in casting early voting and/or election day ballots for the March 3, 2020, Hidalgo County Texas Democratic Primary Election for Hidalgo County Precinct 3 County Commissioner, state the name and address of each and every person(s) who will provide testimony that said voter was illegally assisted in casting an early voting and/or election day ballot for the March 3, 2020, Hidalgo County Texas Democratic Primary Election for Hidalgo County Precinct 3 County Commissioner, and for each such witness state the substance of their testimony.

The trial court signed an "Amended Pre-Trial Order" on April 20, 2020, providing that, though trial had previously been set to begin on May 11, the COVID-19 pandemic necessitated a delay until July 6. In the order, the trial court cited the Governor's March 13, 2020 proclamation declaring a state of disaster, *see* TEX. GOV'T CODE ANN. § 418.014, and the orders issued as of that date by the Texas Supreme Court concerning the pandemic. *See First Emergency Order Regarding COVID-19 State of Disaster*, 596 S.W.3d 265 (Tex. & Tex. Crim. App. Mar. 13, 2020); *Third Emergency Order Regarding COVID-19 State of Disaster*, 596 S.W.3d 266 (Tex. & Tex. Crim. App. Mar. 19, 2020); *see also* TEX. GOV'T CODE ANN. § 22.0035(b). The trial court's April 20 order stated, among other things, that Flores must respond to Villarreal's discovery requests on or before May 1, and all depositions must be completed by May 29.

Flores filed objections to many of Villarreal's discovery requests, and Villarreal moved to compel responses to those requests. In an order dated May 28, 2020, the trial court granted Villarreal's motion to compel, overruled Flores's objections, and ordered Flores to file adequate responses to the discovery requests on or before June 5, 2020. Flores filed supplemental discovery responses on June 5 and again on June 22.

On June 1, 2020, Villarreal filed a motion to dismiss the contest under the Texas

3

Citizens Participation Act (TCPA). The trial court denied the TCPA motion on June 19, 2020, holding that the statute does not apply to election contests. *See Villarreal v. Flores*, No. 13-20-00252-CV, 2020 WL 3957834, at *2 (Tex. App.—Corpus Christi–Edinburg July 10, 2020, pet. dism'd) (mem. op.) (dismissing Villarreal's attempted appeal of the denial of his TCPA motion for want of jurisdiction due to untimely notice of appeal).

On June 8, 2020, Villarreal filed a motion for no-evidence summary judgment arguing that there is no evidence of any of the irregularities alleged in Flores's petition. He further contended that there is no evidence "that 93 or more illegal votes were counted" in the election or that the result of the final canvass did not reflect the true outcome.

Flores filed a response with forty-two exhibits, including thirty-three affidavits, three deposition excerpts, and excerpts from a combination form[1] with voter signatures. Among the exhibits were affidavits by four voters stating that they were paid $20 to $40 in cash in exchange for their votes for Villarreal.[2] The affidavits each state that the affiant is "personally acquainted with the facts herein stated" but do not explicitly state that the facts are true and correct or based on the affiant's personal knowledge.

Nineteen voters stated in identical affidavits that they were assisted in marking their ballots for the election; that they voted for Villarreal; and that at the time of voting, they did not have a physical disability that rendered them unable to write or see and they "could read either English or Spanish." Eight other individuals provided affidavits stating that they personally know that certain voters, who were listed on the combination form as

---

[1] A combination form is a sign-in sheet and affidavit used at polling places. *Gonzalez v. Villarreal*, 251 S.W.3d 763, 767 n.7 (Tex. App.—Corpus Christi–Edinburg 2008, pet. dism'd).

[2] In their affidavits, the witnesses denied that they were paid to give false testimony.

receiving assistance, were ineligible to receive assistance because they are not disabled and are able to read and write English or Spanish. Some of the affidavits alleging illegal assistance state that "the following facts are within my personal knowledge and are true and correct." Most, however, merely state that the affiant is "personally acquainted with the facts herein stated." In total, according to the statements in the affidavits and excluding duplicated names, the affiants alleged that eighty-eight unique voters were illegally assisted.[3]

Flores's response additionally included affidavits attesting that four voters listed in the combination form do not reside at the address reflected on the combination form. Finally, Flores provided records apparently indicating that: (1) one voter pleaded guilty to a third-degree felony and was sentenced to community supervision, but had not completed his term of community supervision at the time he voted; and (2) another voter was convicted of two felonies but voted before he commenced his prison sentence.

In a reply to Flores's response, Villarreal argued that Flores's evidence does not show that any of the purported illegal votes were "counted."[4] Villarreal's reply also contained objections to the exhibits attached to Flores's response. As to the affidavits alleging bribery, Villarreal argued they do not "positively and unqualifiedly represent that the 'facts' as disclosed in the affidavits [are] true and within [the affiant's] personal knowledge." As to the nineteen affidavits alleging that the affiant was illegally assisted,

_____

[3] The names of the individuals who assisted these voters are set forth in the partial combination form attached to Flores's response. Flores argued that, according to printouts from social media websites which were also attached as evidence to his response, the twenty individuals who assisted these voters were all supporters of Villarreal's campaign. He argued that, according to the "complete set" of combination forms throughout the precinct, Villarreal supporters gave assistance to 793 voters in total.

[4] Villarreal's reply also argued that, according to a deposition excerpt which was attached as an exhibit to Flores's response, one witness stated that "like five" people, including herself, were paid to vote for Flores. Villarreal argued that five votes must therefore be subtracted from Flores's total.

Villarreal argued that the affiant did not provide "factual specificity" to support their claim of personal knowledge. As to the eight affidavits in which the affiant attested that other voters were illegally assisted, Villarreal argued that the affiants were not timely identified as witnesses in Flores's discovery responses.

Finally, Villarreal attached to his reply fifteen "counter-affidavits" by Flores's summary judgment witnesses in which they repudiate and disavow their prior testimony. In each "counter-affidavit," the witness states that their previously-executed affidavit is "not correct" and that they that did not "write" or "type" it. Some of the "counter-affidavits" state that the previous affidavit was "not explained" to them.[5] Two witnesses stated in their "counter-affidavits" that they were paid $300 by "Joe Flores's campaign investigator, Jorge Velasco," in exchange for their original affidavit testimony. Villarreal argued in his summary judgment reply that the original affidavits of these witnesses may therefore not be considered because they were obtained illegally.

Flores filed a sur-reply arguing that the combination forms, along with the affidavits, are enough to create a fact issue as to whether all the voters' ballots were "counted." He further objected to the "counter-affidavits," arguing that they fail to point out which specific statements in the original affidavits are incorrect, or how, and that even if they are considered, they merely create a fact issue as to whether those votes are illegal. In particular, with respect to the witnesses who admitted getting paid by Velasco for their affidavits, Flores noted that those witnesses did not specifically deny having been paid to vote for Villarreal.

Following a hearing, the trial court rendered evidentiary rulings and granted

---

[5] The affidavits subject to "counter-affidavits" alleged twenty-one illegal votes in total.

6

Villarreal's summary judgment motion in an "Order Granting Summary Judgment" on July 14, 2020. After Flores filed a motion to reconsider, the trial court signed an "Order Modifying Order Granting Summary Judgment" on July 21, 2020, from which this appeal was taken. This final order states, in relevant part, that Villarreal's "counter-affidavits" are "not appropriate on a movant's no-evidence motion for summary judgment and do no more than challenge the credibility of each of the affiants." The court therefore excluded Villarreal's "counter-affidavits" and overruled Villarreal's objections to the original affidavits based on the "counter-affidavits." However, the court sustained Villarreal's objections to the eleven affidavits in which witnesses attested they were "personally acquainted" with the facts stated therein, holding that this is not equivalent to personal *knowledge* of the facts as required by law. *See* TEX. R. CIV. P. 166a. The court also sustained Villarreal's objections to ten of Flores's affidavits on the basis that the witnesses were not timely disclosed pursuant to its pre-trial discovery order.[6] In all, the court sustained objections to affidavits claiming seventy-seven unique illegal votes.

The trial court's orders purport to make extensive findings of fact and conclusions of law based on the evidence submitted. Ultimately, the court found that, though there was evidence of more than twenty illegal votes cast and "most of the illegal votes" were for Villarreal, "the outcome of the election is not affected" because "the total number of illegal votes is not equal to or greater than the number of votes necessary to change the outcome of the election."

---

[6] Seven of the affidavits excluded for lack of timely disclosure were also excluded for lack of personal knowledge.

## II. APPELLATE JURISDICTION

We first address Villarreal's contention, made in his appellate brief and in a separate motion to dismiss, that we lack jurisdiction over the appeal because Flores failed to file an appellate bond within five days of the trial court's judgment. Villarreal points to the section of the election code governing appeals of primary election contests, which states:

> To be timely, an appellant's bond, affidavit, or cash deposit for costs of appeal must be made not later than the fifth day after the date the district court's judgment in the contest is signed. If the appellant is not required to give security for the costs of appeal, the notice of appeal must be filed by the same deadline.

TEX. ELEC. CODE ANN. § 232.014(b). Citing *Stevens v. McClure*, 732 S.W.2d 115, 117 (Tex. App.—Amarillo 1987, no writ) and *Bailey v. Clark*, 407 S.W.2d 520, 521 (Tex. App.—Fort Worth 1966, no writ), Villarreal argues that a bond is required to perfect an appeal of a primary election contest.

We disagree. The cases cited by Villarreal rely on an obsolete appellate rule requiring a bond to be filed in order to perfect an appeal from any civil case. *See Stevens*, 732 S.W.3d at 116 (citing and applying former TEX. R. APP. P. 40(a)). That rule was repealed in 1997 and replaced by Rule 25, which eliminates the bond requirement. *See* TEX. R. APP. P. 25 cmt. Under Rule 25, an appeal is perfected by the filing of a notice of appeal. *Id.* Villarreal suggests that the rule conflicts with the statute, but election code § 232.014(b) explicitly provides for the situation where, as here, an appellant is not required to provide security for the costs of appeal. *See* TEX. ELEC. CODE ANN. § 232.014(b). In such a situation, the appellant must merely file a notice of appeal within five days of the trial court's judgment, *id.*, which Villarreal did here. The appeal has been properly perfected.

8

Villarreal also contends in his brief and motion to dismiss that we lack jurisdiction because the case is moot. "A case becomes moot if a controversy ceases to exist between the parties at any stage of the legal proceedings, including the appeal." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). When a case becomes moot, the parties no longer have standing, which requires the court to dismiss for lack of subject matter jurisdiction. *City of Krum v. Rice*, 543 S.W.3d 747, 750 (Tex. 2017) (per curiam). A contest of a primary election becomes moot "when a final judgment adjudging the validity or invalidity of a candidate's certificate of nomination is not entered in time for election officials to comply with the statutory deadlines for preparing and conducting the general election, or when absentee balloting has begun during the pendency of the appeal." *Salazar v. Gonzales*, 931 S.W.2d 59, 60 (Tex. App.—Corpus Christi–Edinburg 1996, no writ); *see In re Uresti*, 377 S.W.3d 696, 696 (Tex. 2012) (orig. proceeding) (per curiam) ("Once an election begins, a challenge to the candidacy of an individual becomes moot."); *Iles v. Walker*, 120 S.W.2d 418, 422 (Tex. 1938) ("[W]henever the time comes that it is evident that the contest of a nomination cannot be completed in a tribunal of last resort, as provided by law in such cases, in time for the name to be posted as provided by law, the entire contest proceedings become moot and should be dismissed, and matters left in the same condition that would have existed had no contest been instituted.").

The trial court's order setting accelerated appellate deadlines in this case, *see* TEX. ELEC. CODE ANN. § 232.014(d), states: "The Court has been informed that the election officials must prepare the November 2020 ballot by August 26, 2020."[7] Villarreal argues

_____

[7] Flores states in his brief that he does not agree that general election ballots must be prepared by

9

that, even if we held in Flores's favor, "there is there is simply not enough time" before that date for this appeal to be decided, a trial to be conducted, and an appeal from the trial to be heard and decided. Again, we disagree. Villarreal contends that a trial "is expected to last a minimum of three weeks" because it would require the testimony of more than one hundred witnesses, many of which would require translation services. A trial of such extreme proportions may take several weeks under ordinary circumstances, but these are not ordinary circumstances. If it were faced with strict mandatory timelines, the trial court would have discretion under the Texas Supreme Court's emergency orders to expedite proceedings by extraordinary means, including by compelling the litigants and witnesses to appear for proceedings electronically and/or beyond normal business hours and by considering sworn statements made out of court as evidence. *See Twenty-Second Emergency Order Regarding The COVID-19 State of Disaster*, Misc. Docket No. 20-9095 (Tex. Aug. 6, 2020), *available at* https://www.txcourts.gov/media/1449564/209095.pdf (last visited Aug. 14, 2020). We will not pre-emptively conclude that the case cannot be completed before August 26. Villarreal's motion to dismiss is denied.

### III. SUMMARY JUDGMENT

**A. Applicability in Election Contests**

Flores argues by his first issue that the underlying proceedings "did not comply with the election code" provisions imposing strict timelines in primary election contests. *See, e.g.*, TEX. ELEC. CODE ANN. § 232.008(c)(1) (providing that a primary election contest must be filed "not later than the later of the 30th day after the date the election records

---

August 26, 2020. We find nothing in the record substantiating the trial court's statement regarding the date by which election materials must be prepared, and the parties do not point to any such authority on appeal. We assume, for purposes of this discussion only, that August 26 is the date by which election materials must be prepared.

10

are publicly available . . . or the official result of the contested election is determined"); *id.* § 232.012(c) (providing that a primary contestee must file an answer to the contestant's petition "not later than 10 a.m. of the fifth day after the date of service of citation on the contestee"); *id.* § 232.012(d) (providing that the judge "shall set the contest for trial for a date not later than the fifth day after the date by which the contestee must answer"). He notes that, because of these time constraints, summary judgment procedure is normally unavailable in such contests. *See* TEX. R. CIV. P. 166a(c) (providing that, except on leave of court, the summary judgment motion must be filed least twenty-one days before the hearing date); TEX. R. CIV. P. 166a(i) (providing that a party may move for no-evidence summary judgment only "[a]fter adequate time for discovery"). Flores contends that summary judgment "is not contemplated by the Election Code and indeed appears to be directly prohibited by the Election Code, which requires an expedited bench trial in a primary election contest." *See* TEX. ELEC. CODE ANN. § 231.005 ("The district judge shall decide the issues of fact in an election contest without a jury."); *id.* § 232.012(e) ("The district judge may not grant a continuance in the trial except: (1) one time for a period not exceeding 10 days for good cause supported by the affidavit of a party; or (2) with the consent of the parties.").

In response, Villarreal argues that Flores failed to preserve a blanket objection to the use of summary judgment procedure in accelerated election contests because (1) he failed to raise the issue in his summary judgment response, (2) he did not object to the delayed trial setting when it was ordered by the trial court, and (3) his counsel explicitly agreed at the summary judgment hearing that summary judgment procedure is "proper" in an election contest.

We agree that the issue has not been preserved. When summary judgment is granted, "[i]ssues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." TEX. R. CIV. P. 166a(c). Though Flores argued in his motion to reconsider that summary judgment is improper in election contests generally, he did not make this argument in his summary judgment response, in his summary judgment sur-reply, or at the summary judgment hearing. Therefore, we may not reverse the judgment on that basis. *See id.*

In any event, the election code does not "prohibit" the use of summary judgment procedure, either directly or otherwise. Except where provided in Title 14, Subtitle B of the election code, "the rules governing civil suits in the district court apply to an election contest in the district court." TEX. ELEC. CODE ANN. § 231.002. Title 14, Subtitle B does not state or imply that summary judgment procedures are unavailable in an accelerated election contest. Summary judgments are not typically sought in accelerated election contests because of the strict statutory timelines normally applicable to such suits, but if those timelines are extended—either by agreement of the parties, *see id.* § 232.012(e)(2), or as in this case, pursuant to the Texas Supreme Court's emergency pandemic orders— there is nothing precluding the use of that procedure. *See Pryor v. Dolgener*, 324 S.W.3d 178, 179 (Tex. App.—El Paso 2010, pet. dism'd w.o.j.) (affirming summary judgment in accelerated appeal of bond election contest); *Reese v. Duncan*, 80 S.W.3d 650, 665 (Tex. App.—Dallas 2002, pet. denied) (noting, in accelerated appeal of election contest, that no-evidence motion for summary judgment had been denied); *see also Regalado v. Munoz*, No. 13-14-00274-CV, 2014 WL 3542056, at *4 (Tex. App.—Corpus Christi– Edinburg July 17, 2014, no pet.) (mem. op.) (affirming no-evidence summary judgment in

primary election contest); *Vazaldua v. Munoz*, No. 13-14-00275-CV, 2014 WL 2937014, at *5–7 (Tex. App.—Corpus Christi–Edinburg June 20, 2014, no pet.) (mem. op.) (affirming traditional summary judgment in primary election contest). Specifically, § 231.005 of the election code—which requires the court to "decide the issues of fact in an election contest without a jury"—does not proscribe summary judgment because if summary judgment is warranted, then by definition, there are no fact issues to decide. *See* Tex. R. Civ. P. 166a(c) (stating that the court must grant a traditional summary judgment motion if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law); Tex. R. Civ. P. 166a(i) (stating that the court must grant a no-evidence summary judgment motion "unless the respondent produces summary judgment evidence raising a genuine issue of material fact").

Flores's first issue is overruled. We note, however, that at the summary judgment stage, findings of fact and conclusions of law "can have no purpose and should not be requested, made, or considered on appeal." *IKB Indus. (Nigeria) Ltd. v. Pro–Line Corp.*, 938 S.W.2d 440, 443 (Tex. 1997); *Linwood v. NCNB Tex.*, 885 S.W.2d 102, 103 (Tex. 1994). Thus, in our analysis, we do not consider the findings of fact or conclusions of law made in the trial court's judgment, except to discern the reasons for the trial court's evidentiary rulings.

## B. Standard of Review and Applicable Law

"After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." Tex. R. Civ. P. 166a(i). To defeat the motion, the non-

movant must produce more than a scintilla of evidence to raise a fact issue on the challenged elements. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).[8] More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms. Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983). Summary judgment evidence is viewed in the light most favorable to the non-movant. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009). We review the trial court's ruling de novo. *Id.*

In an election contest, the trial court must "attempt to ascertain whether the outcome of the contested election, as shown by the final canvass, is not the true outcome because," as pleaded in this case, "illegal votes were counted." TEX. ELEC. CODE ANN. § 221.003(a)(1). An "illegal vote" is one "that is not legally countable." *Id.* § 221.003(b).

If the court can ascertain the candidate for which an illegal vote was cast, the court must subtract that vote from the candidate's official total. *Id.* § 221.011(a). If the court finds that illegal votes were cast but cannot ascertain which candidate the illegal votes were cast for, it shall consider those votes in making its judgment. *Id.* § 221.001(b). If the number of illegal votes is equal to or greater than the number of votes necessary to

---

[8] Flores contends in his brief on appeal that "[his] original petition set up genuine issues of material fact to be tried to the court"; that he "was not required to marshal his proof" at this stage of the proceedings; and that "to obtain summary judgment in the proper setting, it would have been [Villarreal's] burden to 'negative' [sic] the facts alleged in [Flores's] petition in order to avoid a trial." Flores's attempts to shift the burden to Villarreal are unavailing. Rule 166a(i) clearly places the burden on the non-movant to produce admissible, probative evidence to support its prima facie case. *See* TEX. R. CIV. P. 166a(i). More than a scintilla is enough, but unsworn allegations made in a petition are not "evidence" at all. *Hidalgo v. Sur. Sav. & Loan Ass'n*, 462 S.W.2d 540, 543 (Tex. 1971) ("Pleadings simply outline the issues; they are not evidence, even for summary judgment purposes.").

change the outcome of an election, the court may declare the election void without attempting to determine how individual voters voted. *Id.* § 221.009(b).

**C. Analysis**

Flores argues by part of his third issue that the trial court erred by sustaining certain objections to his summary judgment evidence. On their face, the forty-two exhibits submitted by Flores in response to the summary judgment motion alleged 98 illegal votes in total: four bribed votes, 88 illegally assisted votes, four non-resident votes, and two ineligible ex-felon votes. If all of these exhibits constituted competent, probative summary judgment evidence raising a fact issue, then no-evidence summary judgment would be improper because, in that hypothetical situation, Flores would have produced more than a scintilla of evidence showing that the number of illegal votes exceeded Villarreal's margin of victory according to the final canvass. *See id.* However, as noted, the trial court sustained objections to many of the affidavits on different grounds. Therefore, the case turns on whether those evidentiary rulings were erroneous.

A trial court's evidentiary rulings are reviewed on appeal for abuse of discretion. *Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 27 (Tex. 2014). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner, or if it acts without reference to guiding rules or principles. *Samlowski v. Wooten*, 332 S.W.3d 404, 410 (Tex. 2011); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

Villarreal objected to several of Flores's affidavits because they do not show the witnesses had personal knowledge of the facts to which they testified. In summary judgment proceedings, "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show

15

affirmatively that the affiant is competent to testify to the matters stated." TEX. R. CIV. P. 166a. An affidavit which does not positively and unqualifiedly represent the facts as disclosed in the affidavit to be true and within the affiant's personal knowledge is legally invalid. *Humphreys v. Caldwell*, 888 S.W.2d 469, 470 (Tex. 1994). This Court has held that,

> where the affidavit does not specifically recite that the facts set forth there are true, but does set out that it is based on personal knowledge and is subscribed to and sworn before a notary public, it is not defective if, when considered in its entirety, its obvious effect is that the affiant is representing that the facts stated therein are true and correct.

*Fed. Fin. Co. v. Delgado*, 1 S.W.3d 181, 184 (Tex. App.—Corpus Christi–Edinburg 1999, no pet.).

In this case, Flores offered thirty-three affidavits as summary judgment evidence. Twenty-four stated that the affiant had "personal knowledge" of the facts stated therein and that those facts are "true and correct," but nine merely stated that the affiant was "personally acquainted" with the facts. The trial court excluded these nine affidavits on grounds that they did not show the affiant had "personal knowledge" of the facts stated therein.

In his motion for reconsideration and on appeal, Flores points out that several other Texas appellate courts have found that an affiant's statement that he or she is "personally acquainted" with the facts may be sufficient to show the affiant's personal knowledge. *See Pipkin v. Kroger Tex., L.P.*, 383 S.W.3d 655, 669 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (holding that "an affidavit does not need to specifically state that it is made on personal knowledge if the statements in the affidavit show the affiant was speaking from personal knowledge"); *Cooper v. Circle Ten Council Boy Scouts of Am.*, 254 S.W.3d 689, 698 (Tex. App.—Dallas 2008, no pet.) ("Stating that one is 'personally

16

acquainted' with the facts contained in the affidavit is sufficient to meet the personal knowledge requirement."); *Churchill v. Mayo*, 224 S.W.3d 340, 346 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) ("By stating that she is 'personally acquainted with the facts herein stated,' the affidavit plainly represents that it is made from her personal knowledge."); *Merch. Ctr., Inc. v. WNS, Inc.*, 85 S.W.3d 389, 396 (Tex. App.—Texarkana 2002, no pet.) (stating that "the different terminology is nothing more than an exercise in semantics"); *see also Long v. Sw. Funding, L.P.*, No. 03-15-00020-CV, 2017 WL 672445, at *5 (Tex. App.—Austin Feb. 16, 2017, no pet.) (mem. op.) (noting that "an affiant's position or job responsibilities can qualify him to have personal knowledge of facts and establish how he learned of the facts, and it is sufficient for him to state that he is personally acquainted with the facts and that he has access to, has reviewed, and is familiar with the records attached to the affidavit").

As the trial court noted in its modified final order, this Court has not held that "personally acquainted" language is, by itself, sufficient to establish an affiant's personal knowledge. And we disagree with the cited cases to the extent they hold that such language is *always* sufficient to serve that purpose. Instead, as we explained in *Delgado*, the entire affidavit must be examined to determine whether its "obvious effect" is to show that the affiant is competent to testify to the matters stated. *Delgado*, 1 S.W.3d at 184. Here, we cannot conclude that the trial court abused its discretion in determining that the challenged affidavits do not have the "obvious effect" of showing the affiants' personal knowledge of the matters stated. We may not disturb the trial court's decision where, as here, it was made with reference to guiding rules and principles and was not unreasonable or arbitrary. *See Samlowski*, 332 S.W.3d at 410; *Downer*, 701 S.W.2d at 241–42. The

17

trial court was within its discretion to determine that "personally acquainted" is not equivalent to "personal knowledge" for purposes of these affidavits.

As noted, the trial court also sustained Villarreal's objections to ten affidavits offered by Flores on grounds that the witnesses were not timely disclosed pursuant to its discovery order. Texas Rule of Civil Procedure 193.6 provides as follows:

> (a) Exclusion of evidence and exceptions. A party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed, or offer the testimony of a witness (other than a named party) who was not timely identified, unless the court finds that:
>
> > (1) there was good cause for the failure to timely make, amend, or supplement the discovery response; or
> >
> > (2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.
>
> (b) Burden of establishing exception. The burden of establishing good cause or the lack of unfair surprise or unfair prejudice is on the party seeking to introduce the evidence or call the witness. A finding of good cause or of the lack of unfair surprise or unfair prejudice must be supported by the record.
>
> (c) Continuance. Even if the party seeking to introduce the evidence or call the witness fails to carry the burden under paragraph (b), the court may grant a continuance or temporarily postpone the trial to allow a response to be made, amended, or supplemented, and to allow opposing parties to conduct discovery regarding any new information presented by that response.

TEX. R. CIV. P. 193.6. "The burden of showing the good cause exception applies is on the party offering the evidence, and to sustain this burden, documentary or testimonial proof must be supplied." *Satterwhite v. Safeco Land Title of Tarrant*, 853 S.W.2d 202, 206 (Tex. App.—Fort Worth 1993, writ denied)

In its modified final judgment, the trial court observed that neither party objected to the discovery timelines set forth in the April 20 "Amended Pre-Trial Order." In that order,

18

Flores was ordered to respond to Villarreal's discovery requests on or before May 1, 2020. In granting Villarreal's motion to compel discovery responses, the trial court ordered Flores to comply on or before June 5, 2020.[9] However, the authors of the ten affidavits at issue were not identified by Flores as witnesses until he filed a supplemental witness list on June 22, 2020. The trial court found in its modified final judgment that these witnesses were not timely identified and that Flores "has not shown good cause for the late production or filing of the supplemental list, nor has he shown any lack of unfair surprise or prejudice." *See id.* The court noted that Flores never requested, in writing or orally, any further extension of time to provide discovery or to designate witnesses.

Flores argues that he was unable to timely file the supplemental witness list because, when Villarreal filed his TCPA motion to dismiss on June 1, that effectuated a mandatory stay of discovery under the statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(c) ("Except as provided by Section 27.006(b), on the filing of a motion under this section, all discovery in the legal action is suspended until the court has ruled on the motion to dismiss."). However, as Villarreal notes, Flores did not seek an order allowing discovery under the TCPA. *See id.* § 27.006(b) ("On a motion by a party or on the court's own motion and on a showing of good cause, the court may allow specified and limited discovery relevant to the motion."). Moreover, Flores *did* file a supplemental discovery response after the mandatory TCPA discovery stay had taken effect. In that June 5, 2020 filing, Flores named over 800 witnesses—but not the ten at issue here. Under these circumstances, the trial court did not abuse its discretion in concluding that Flores failed

---

[9] In its modified final judgment, the trial court erroneously stated that the deadline was extended only until May 28, 2020.

to meet his burden to establish either good cause for the late response or lack of unfair surprise or prejudice. *See* TEX. R. CIV. P. 193.6(b). Again, because the decision was made with reference to guiding rules and principles and was not unreasonable or arbitrary, we are not at liberty to disturb it. *See Samlowski*, 332 S.W.3d at 410; *Downer*, 701 S.W.2d at 241–42.

By another part of his third issue and by his fourth issue, Flores also contends that the trial court erred by refusing to extend discovery deadlines pursuant to the emergency pandemic orders issued by the Texas Supreme Court. The emergency order in effect as of August 14, 2020, states in relevant part:

> Subject only to constitutional limitations, all courts in Texas may in any case, civil or criminal—and must to avoid risk to court staff, parties, attorneys, jurors, and the public—without a participant's consent:
>
> a. except as provided in paragraph (b) [regarding proceedings under Subtitle E, Title 5 of the family code], modify or suspend any and all deadlines and procedures, whether prescribed by statute, rule, or order, for a stated period ending no later than September 30, 2020; . . .
>
> c. allow or require anyone involved in any hearing, deposition, or other proceeding of any kind—including but not limited to a party, attorney, witness, court reporter, grand juror, or petit juror—to participate remotely, such as by teleconferencing, videoconferencing, or other means; [and]
>
> d. consider as evidence sworn statements made out of court or sworn testimony given remotely, out of court, such as by teleconferencing, videoconferencing, or other means.

*Twenty-Second Emergency Order Regarding The COVID-19 State of Disaster*, Misc. Docket No. 20-9095 (Tex. Aug. 6, 2020), *available at* https://www.txcourts.gov/media/1449564/209095.pdf (last visited Aug. 14, 2020). Flores argues that the trial court should have extended the discovery deadlines so as to render his supplemental witness list timely. However, Flores did not request an extension of time under the emergency orders prior to the discovery deadline, or in any of his summary judgment pleadings; instead, he

20

made it for the first time in his motion to reconsider.

Assuming but not deciding that this issue is preserved, we find no abuse of discretion. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004) ("When reviewing a trial court's order denying a motion for continuance, we consider whether the trial court committed a clear abuse of discretion on a case-by-case basis."). As noted, primary election contests are subject to exceptionally strict statutory timelines; the discovery deadline had essentially already been extended after the trial court granted Villarreal's motion to compel; and the trial court had already delayed the trial date by several months due to pandemic concerns. Here, the trial court could have reasonably determined that any further delay of discovery deadlines or the trial date would have seriously jeopardized its ability to hear and decide the case before the general election. *See In re Uresti*, 377 S.W.3d at 696; *Iles*, 120 S.W.2d at 422; *Salazar*, 931 S.W.2d at 60. We overrule Flores's third and fourth issues.

In Flores's second issue, he argues he provided more than a scintilla of evidence to support his claims. However, we have already concluded that the trial court did not abuse its discretion in excluding evidence of seventy-seven illegal votes. The admissible summary judgment evidence would support a finding of, at most, twenty-one illegal votes, which is far less than the number of illegal votes needed to establish Flores's claims— i.e., that he was the actual winner of the election or that the actual winner cannot be determined because illegal votes were counted. *See* TEX. ELEC. CODE ANN. §§ 221.003(a)(1), 221.009(b). We therefore conclude that the trial court did not err in granting Villarreal's motion for no-evidence summary judgment, and we overrule Flores's

second issue.[10]

## IV. Conclusion

The trial court's judgment is affirmed. No motion for rehearing will be entertained, and our mandate will issue forthwith. *See id.* § 232.014(e), (f).

DORI CONTRERAS
Chief Justice

Delivered and filed the
17th day of August, 2020.

---

[10] Because of our conclusion, we need not address Flores's fifth issue on appeal, in which he asks us to render judgment in his favor. *See* Tex. R. App. P. 47.1.